**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
_____

|  |  |  |
|---|---|---|
| | ) | |
| DIANE LITTLE-KING | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | ORIGINAL CLASS ACTION |
| | ) | COMPLAINT |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| HAYT, HAYT & LANDAU, LLC and | ) | |
| FIRST AMERICAN ACCEPTANCE | ) | |
| CO., LLC | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

## <u>ORIGINAL CLASS ACTION COMPLAINT</u>

### NATURE OF ACTION

1.      This is class action brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where acts and transactions giving rise to Plaintiff's action occurred in this State and this District, where Plaintiff resides in this State and this District, and where Defendants transact business in this State and this District.

### PARTIES

4.      Plaintiff Diane Little-King ("Plaintiff") is a natural person who at all relevant times resided in the State of New Jersey, County of Essex.

5.      Defendant Hayt, Hayt & Landau, LLC, ("HH&L"), is a limited liability company with a principal place of business situated at Two Industrial Way West, Eatontown, NJ 07724.

6.      HH&L is a limited liability company which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

7.      HH&L uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

8.      HH&L is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.      Defendant First American Acceptance Co., LLC ("First American"), is a New Jersey Limited Liability Company with a principal place of business situated at Two Industrial Way West, Eatontown, NJ 07724.

10.     First American is a corporation which at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

11.     First American uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

12.     First American is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

13.     At all times relevant HH&L acted as an agent in furtherance of the objectives of its principal, First American.  First American is jointly and severally liable for the acts and omissions of its agent.

## FACTUAL ALLEGATIONS

14.    Plaintiff is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than HH&L and First American; namely Chase Bank.

15.    Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than HH&L and First American arises from a transaction or transactions in which the money, property, insurance, and/or services that are the subject of the transaction(s) were incurred primarily for personal, family, or household purposes; namely, a Chase Bank consumer credit card account:  XXXX XXXX XXXX 6600.

16.    HH&L and First American each use instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another.

17.    HH&L and First American constitute a single economic enterprise engaged in the business of consumer debt purchasing and collections in the State of New Jersey.

18.    First American is a mere instrumentality of HH&L.

19.    Recognizing the corporate existence of First American separate from HH&L would work a fraud or injustice on Plaintiff, so as to warrant piercing the corporate veil.

20.    The nature of the single economic enterprise consisting of HH&L and First American is established both by the entities' appearance to the public and the actual interdependent relationship between HH&L and First American.

21.    HH&L and First American are managed by an interlocking directorate consisting of Martin Rubin, managing member to both HH&L and First American.

22.    Martin Rubin is, upon information and belief, First American's sole employee.

23.     Through First American, HH&L purchases portfolios of charged-off consumer debt.

24.     Through HH&L, First American attempts to collect the portfolios of charged-off consumer debt it purchases.

25.     First American purchased Plaintiff's Chase account.

26.     First American placed Plaintiff's Chase account with HH&L for collection.

27.     On or about June 9, 2010, HH&L and First American printed and mailed, or caused to be printed and mailed, a letter to Plaintiff in an effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than HH&L and First American.  ("Letter").

28.     A true and correct copy of the Letter is attached hereto as Exhibit "A".

29.     The Letter states in relevant part:

> Under Federal Law, 15 U.S.C. sec. 1692 et seq., unless you dispute the validity of this debt, or any portion of the debt, within thirty (30) days after receipt of this notice, we will assume the debt is valid.  If you notify us within the thirty-day period that the debt, or any portion of the debt, is disputed, we will obtain and mail to you verification of the debt or a copy of any judgment.  Upon your request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

(Exhibit "A").

30.     The Letter represents HH&L and First American's initial written communication to Plaintiff.

31.     The Letter fails to provide the disclosures required by 15 U.S.C. § 1692g(a)(4) and 1692g(a)(5), and HH&L and First American failed to provide Plaintiff with such disclosures within five (5) days thereafter.

32.     HH&L's debt collection practice is a high volume practice.

33.     HH&L's debt collection practice is largely automated and utilizes standardized form letters.

34.     HH&L and First American, as a matter of pattern and practice, mail or send, or cause to be mailed or sent, communications to alleged debtors using language substantially similar or materially identical to that utilized by HH&L and First American in mailing, or causing to be mailed, the Letter to Plaintiff.

35.     The Letter is a standardized form letter which, upon information and belief, was sent, or caused to be sent, over the course of the past year by HH&L and First American to at least 200 New Jersey consumers from whom HH&L and First American attempted to collect a debt.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 35.

37.     Plaintiff brings this action on behalf of herself and all others similarly situated. Specifically, Plaintiff seeks to represent a class of individuals defined as:

> All persons located in New Jersey who, within one year before the date of this complaint, received a letter from HH&L in connection with an attempt to collect any consumer debt purchased by First American, where the letter was substantially similar or materially identical to the letter delivered to Plaintiff.

38.     The proposed class specifically excludes the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court, all officers and agents of Defendant and all persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

39.     The class is averred to be so numerous that joinder of members is impracticable.

5

40.     The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

41.     The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by HH&L and First American.

42.     There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented.  These common questions of law and fact predominate over questions that may affect individual class members.  Such issues include, but are not limited to: (a) The existence of HH&L and First American's identical conduct particular to the matters at issue; (b) HH&L and First American's violations of 15 U.S.C. §1692 *et. seq.*; (c) The availability of statutory penalties; and (d) Attorney's fees and costs.

43.     The claims of Plaintiff are typical of those of the class she seeks to represent.

44.     The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure, on the part of HH&L and First American.  Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts.

45.     Plaintiff possesses the same interests and has suffered the same injuries as each class member.  Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

46.     Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class.

47.     Plaintiff is willing and prepared to serve this Court and proposed class.

48.     The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

49.     Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

50.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B).  The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

51.     The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the class.   Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

52.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Pressler and New Century have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

53.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

54.     A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has been commenced over the controversies alleged in this Complaint and individual members are unlikely to have interest in

prosecuting and controlling separate individual actions; (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

### COUNT I: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT § 1692g(a)(4)-(5)

55.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 54.

56.     The FDCPA at section 1692g(a) provides:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing —

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

57.     "Section 1692g gives debtors the right to dispute a debt and seek verification of the validity thereof within 30 days of receipt of a debt collection letter." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (*citing* 15 U.S.C. § 1692g(b).

58.    "The Act further mandates the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer."  *Id.*  (*citing* 15 U.S.C. § 1692g(b).

59.    "However, if the consumer fails to contact the debt collector within 30 days these rights are lost forever."  *Swanson v. Southern Oregon Credit Serv*., 869 F.2d 1222, 1225 (9th Cir. 1988).

60.    "The debt validation provisions of section 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law."  *Wilson*, 225 F.3d at 354.  (*citing* S.Rep. No. 382, 95th Cong., 1st Sess. 4, 8, reprinted in 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702).   To determine whether a debt collector has "effectively conveyed" the validation notice, the United States Court of Appeals for the Third Circuit applies the "least sophisticated debtor" standard.  *Wilson*, 225 F.3d at 354 (3d Cir. 2000).

61.    "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'"  *Id.* (*citing Russell v. Equifax A.R.S.,* 74 F.3d 30, 34-35 (2d Cir. 1996) ("When determining whether § 1692g has been violated, an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector, is applied.  The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer — one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer — understands the notice he or she receives.  This least-sophisticated-consumer standard best effectuates the Act's purpose of limiting the 'suffering and anguish' often inflicted by independent debt collectors." (Internal citation and quotation omitted)).

62.     The Letter fails to communicate that to be entitled to a verification of the debt under subsection (a)(4) or to obtain the name and address of the original creditor under subsection (a)(5) the request must to be in writing.

63.     HH&L and First American's omission would reasonably lead the least sophisticated consumer to believe, erroneously, that a verbal dispute of the debt will protect her rights in obtaining verification.  *See Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d 336, 340-41 (E.D.N.Y. 2002) ("Any consumer, not simply the least sophisticated consumer, who read this letter would not know that to secure her right to obtain verification of the debt and the identity of the original creditor, her dispute of the debt and request for the identity of the original creditor must be in writing."); *see also Nero v. Law Office of Sam Streeter, PLLC*, 655 F. Supp. 2d 200, 206 (E.D.N.Y. 2009) (same); *Welker v. Law Office of Daniel J. Horwitz*, 699 F.Supp.2d 1164 (S.D. Cal. 2010) ("Accordingly, there can be no dispute Defendant violated the FDCPA insofar as its dunning letter failed to advise [the plaintiff] that to be entitled to a verification of the debt under subsection (a)(4) or to obtain the name and address of the original creditor under subsection (a)(5) the request had to be in writing.").

64.     "The least sophisticated consumer could certainly interpret Defendants' letter to Plaintiff to mean that she would obtain verification of the debt or the identity of the original creditor by contacting Defendants' at the telephone number provided.  Without a statement that these requests must be in writing, the least sophisticated consumer is not simply uncertain of her rights under the statute, she is completely unaware of them."  *Grief*, 217 F. Supp. 2d 336, 340-41 (E.D. N.Y. 2002).   In addition, a consumer who is not informed of the writing requirements would be unable to avail herself of the protections afforded by Section 1692g(b).  For example, if debt collector does not inform the consumer that a debt dispute must be in writing, the consumer could dispute the debt during a telephone call to the debt collector, but the debt collector would

not be required to cease its collection efforts and the consumer would not benefit from the protections afforded by the FDCPA.  *See Id.*

65.     HH&L and First American violated 15 U.S.C. § 1692g(a) by failing to disclose in the Letter, or within five days thereafter, the information required by 15 U.S.C. § 1692g(a)(4)-(5).

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.   Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and designating this Complaint the operable complaint for class purposes;

b.   Adjudging that HH&L and First American violated 15 U.S.C. § 1692g(b).

c.   Awarding Plaintiff, and all those similarly situated, statutory damages, pursuant to 15 U.S.C. §1692k, in the amount of $1,000.00 per class member.

d.   Awarding Plaintiff, and all those similarly situated, their reasonable attorneys' fees ands costs incurred in this action, including counsel fees and expert fees;

e.   Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law;

f.   Awarding such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

66.     Plaintiff is entitled to and hereby demands a trial by jury on all counts.

Dated:  September 27, 2011. Respectfully submitted,

 WEISBERG & MEYERS, LLC

By: /s/ Dennis R. Kurz
  Dennis R. Kurz
  dkurz@attorneysforconsumers.com
  Weisberg & Meyers, LLC
  5025 N. Central Ave., #602
  Phoenix, AZ 85012
  Telephone: (888) 595-9111
  Facsimile: (866) 842-3303

  *Attorneys for Plaintiff*
  DIANE LITTLE-KING