**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| **DIANE LITTLE-KING,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 11-5621 (MAH)** |
| **v.** | : | |
| | : | |
| **HAYT HAYT & LANDAU, et al.,** | : | **OPINION** |
| | : | |
| **Defendants.** | : | |
| | : | |

---

## I. INTRODUCTION

This matter comes before the Court on the motion of Plaintiff Diane Little-King ("Plaintiff") and others similarly situated, and Defendants Hayt, Hayt & Landau, LLC and First American Acceptance Co. (collectively "Defendants"), to: (1) certify the class and grant final approval of the parties' settlement pursuant to Federal Rule of Civil Procedure 23; (2) apply for an award of attorneys' fees and reimbursement of expenses; and (3) approve an incentive award pursuant to Rule 23(h).[1]  Plaintiff alleges that Defendants, acting as debt collectors, sent her a letter that did not conform with the Fair Debt Collection Practices Act ("FDCPA") and filed this matter on behalf of herself and others similarly situated.  The proposed class includes consumers in both New Jersey and Pennsylvania who received similar letters from Defendants.  The proposed settlement would resolve all claims asserted against Defendants arising from Plaintiff's Amended Complaint.

---

[1] By Consent and Order filed on May 14, 2012, the parties consented to the Undersigned's jurisdiction (ECF No. 30).

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

These facts are based on allegations in Plaintiff's Amended Complaint.[2]  Plaintiff owed a debt to Chase Bank due to an outstanding credit card balance.  Am. Compl., ¶¶ 14, 15.  Defendants purchased the debt from Chase Bank for collection.  Id. at ¶ 26.  On June 9, 2010, Defendants mailed a debt-collection letter to Plaintiff.  Id. at ¶ 27.  Plaintiff alleges that the letter failed to provide disclosures required by 15 U.S.C. §§ 1692g(a)(4) and (a)(5).  Id. at ¶ 34.  Those sections provide:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:
>
> \* \* \*
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(4) and (a)(5).  The alleged deficiency is that Defendants' letter did not state that Plaintiff had to dispute the debt or request creditor information in writing.  Am. Compl., ¶ 62.  Plaintiff further alleges that Defendants used a form letter, which was sent to thousands of

---

[2] Plaintiff originally filed her Complaint on September 27, 2011 (ECF No. 1).  Plaintiff then filed an Amended Complaint on March 23, 2012 (ECF No. 21).  The Amended Complaint made substantially similar allegations to the original complaint, but expanded the scope of the putative class to include Pennsylvania consumers as well as New Jersey consumers who had received substantially similar letters from Defendants.

individuals in New Jersey and Pennsylvania, and therefore this matter should proceed as a class action.  Id. at ¶ 37.

On June 5, 2012, the parties moved to preliminarily certify the class and approve the class action settlement (ECF No. 32).  The Court held an in-person conference with counsel on October 25, 2012, and ordered that any supplement to the joint motion be submitted by November 8, 2012 (ECF No. 37).  The parties refiled their motion on November 8, 2012 (ECF No. 38).  The Court granted preliminary certification of the class and approval of the settlement (ECF No. 39), and set a final fairness hearing for February 22, 2013.

Shortly after preliminary approval, the parties provided notice of the action and settlement to potential class members, informing them of their right to be part of the class, to be excluded from the class, or to object.  The Court received four objections and a motion to intervene by three of the Objectors (ECF Nos. 41-43, 46).

The Court held the final fairness hearing on February 22, 2013.  The Objectors were allowed to appear and be heard on their application to intervene and their objections.  See, e.g., Tr. of Hrg. on Feb. 22, 2013, ECF No. 54, at 3:14 to 4:4; 18:23 to 34:3.  At the conclusion of the hearing, the Court ordered the parties and Objectors to submit supplemental briefing addressing the Objectors' concerns regarding the fairness of the settlement and the adequacy of the class notice (ECF No. 52).  The Court received supplemental briefs from Defendants (ECF No. 55), Objectors (ECF No. 56), and Plaintiff (ECF No. 57).  In addition, Plaintiff's counsel submitted an affidavit and certification of attorneys' fees (ECF No. 58).  The Court has carefully reviewed all of those documents.

**Settlement Terms**

The terms of the settlement are memorialized in the Class Action Settlement Agreement ("Settlement"), and the Court has reviewed those terms in full.  The Settlement defines the putative class as:

> All persons located in New Jersey and Pennsylvania, according to the last known address set forth in Defendants' records, who, within one year before the date of the Original Class Action Complaint received an initial letter from Hayt, Hayt & Landau in connection with an attempt to collect a consumer debt, where the letter was materially identical to the letter sent to Plaintiff, and wherein there was a validation notice which did not state that such persons who disputed the alleged debt or were requesting the name and address of the original creditor should do so in writing[.]

Settlement, attached as Exhibit 4 to Defendants' Response to Objectors (ECF No. 55-4), at 4. Through a review of their records, Defendants estimated the putative class to include more than 51,000 members.  Plaintiff's counsel reviewed the records and determined Defendants' estimate to be accurate.  Declaration of Noah Radbil, Esq. ("Radbil Decl."), ECF No. 32-1, ¶ 14.

Per the Settlement, Defendants have agreed to pay the named Plaintiff $1,000 in full and complete satisfaction of her statutory claims under the FDCPA, as well as an additional $1,000 to Plaintiff as an incentive award for serving as class representative.  In addition, Defendants have agreed to pay a total of $40,000 to be divided pro rata among those submitting valid claims in satisfaction of the unnamed class members' claims.  Under the Settlement Agreement, no class member would receive more than $1,000.  Additionally, and separate from the class fund, Defendants have agreed to pay $40,000 to Plaintiff's counsel for attorneys' fees and costs. Finally, Defendants would separately pay the costs of administering class notice and payment of the settlement.

The parties sent a notice to all potential class members in order to inform them of this action and their right to file a claim, to opt-out of the class, or to lodge an objection. Defts.' Supp. Mem., Ex. B, ECF No. 55-2.

First Class, Inc. ("First Class") was appointed Claims Administrator. Through First Class's efforts, along with Defendants' records, notices of the claim and settlement were sent to 49,156 class members. Affidavit of Michael Sutherland, Claims Administrator (ECF No. 51-2) at ¶ 7. The notice was sent via first-class mail and First Class received 5,082 valid claim forms. Id. at ¶¶ 12-13. In addition, First Class received twenty-two valid requests for exclusion. Id. at ¶ 14. Therefore, each class member will receive approximately $7.87. Four objections have been lodged as well, which the Court addresses below.

### **Jurisdiction**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims set forth in the Amended Complaint allege violations of the FDCPA. Specifically, the Amended Complaint alleges that the debt-collection letter Defendants mailed to Plaintiff failed to provide disclosures required by 15 U.S.C. §§ 1692g(a)(4) and (a)(5). See Amended Complaint ¶¶ 34, 37, 62.

The Court has personal jurisdiction over all parties and settlement class members. After the Court granted preliminary certification of the class and approval of the settlement on November 20, 2012 [ECF No. 39], the parties provided notice of the action and settlement to potential class members, informing them of their right to be part of the class, to be excluded from the class, or to object. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985); Carlough v. Amchem Prods., Inc., 10 F.3d 189, 199 (3d Cir. 1993).

## III.  CLASS CERTIFICATION

As this case has not proceeded to the class-certification stage, the Court first must determine whether to certify the settlement class.  The Court has already conditionally certified the class (ECF No. 39).  The Third Circuit in In re Insurance Brokerage Antitrust Litigation, 579 F.3d 241, 257-58 (3d Cir. 2009), explained the standard for class certification in the settlement context.  In order to approve a class settlement agreement, "a district court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b) are met and must determine that the settlement is fair to the class under Federal Rule of Civil Procedure 23(e)."  Id.; see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 296 (3d Cir. 2011).

As the Supreme Court has made clear:  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial. But other specifications of [Rule 23] -- those designed to protect absentees by blocking unwarranted or overbroad class definitions -- demand undiluted, even heightened, attention in the settlement context."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) (citation omitted).  Thus, it is important to "apply[] the class certification requirements of Rules 23(a) and (b) separately from [the] fairness determination under Rule 23(e)."  In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 308 (3d Cir. 1998).

"The requirements of [Rule 23] (a) and (b) are designed to insure that a proposed class has 'sufficient unity so that absent class members can fairly be bound by decisions of class representatives.'"  Id. at 309 (quoting Amchem, 521 U.S. at 621).  Under Rule 23(a), the prerequisites to class certification are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see Amchem, 521 U.S. at 613.

"If all of the prerequisites of Rule 23(a) are satisfied, a class action may be maintained if the standards set forth in Rule 23(b) are satisfied as well." In re Insurance Brokerage, 579 F.3d at 257; Fed. R. Civ. P. 23(b). Rule 23(b)(3) requires "the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Amchem, 521 U.S. at 618 ("Among current applications of Rule 23(b)(3), the 'settlement only' class  has become a stock device"). The "factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence.  In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." In re Insurance Brokerage, 552 F.3d at 258 (citations and internal quotations omitted).  Accordingly, "[c]lass certification is proper only if the [] court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." Id. (internal quotation marks omitted).

"Even if it has satisfied the requirements for certification under Rule 23, a class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate." In re Prudential Ins. Co., 148 F.3d at 316 (internal

-7-

quotation marks omitted); see Fed. R. Civ. P. 23(e)(2) (stating that a district court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate"). In re Insurance Brokerage, the Third Circuit affirmed the applicability of nine factors, established in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), which the Court must consider when assessing the fairness of a proposed settlement. In doing so, the Court is mindful of the Third Circuit's admonition that "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even more scrupulous than usual when examining the fairness of the proposed settlement." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3d Cir. 2004) (internal quotation marks omitted).

As stated earlier, the parties agree that the settlement class should consist of all persons in New Jersey and Pennsylvania who received a substantially similar letter to that received by Plaintiff from within one year prior to the Plaintiff's filing of her initial complaint[3] (September 27, 2010) to the Court's preliminary approval (November 20, 2012).

### 1.    Numerosity

First, the Court determines whether Plaintiff has satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). With respect to numerosity, a party need not precisely enumerate the class members to proceed as a class action. See In re Lucent Tech. Inc., Sec. Litig., 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that

---

[3] The complaint was filed September 27, 2011. Therefore, the time period for the class begins September 27, 2010. The Objectors complain that the parties did not make that information sufficiently clear in the Notice. The Court addresses this concern below.

the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."

Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al.,

Moore's Federal Practice S 23.22[3][a] (Matthew Bender 3d ed. 1999)); see also Leeseberg v.

Converted Organics, Inc., No. 08-926, 2010 U.S. Dist. LEXIS 124845, at *5 (D.Del. Nov. 22,

2010); Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D.Pa. 1989).

Here, the numerosity element is easily satisfied.  There is no dispute that there are

thousands of potential class members.  Indeed, Defendants estimated the number to be in excess

of 51,000 and nearly 50,000 individual notices were sent.  Therefore, joinder of all class

members is impracticable.

### 2.    Commonality

Commonality requires that "there are questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  The threshold for establishing commonality is straightforward: "The

commonality requirement will be satisfied if the named plaintiffs share at least one question of

fact or law with the grievances of the prospective class."  In re Schering Plough Corp. ERISA

Litig., 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir.

1994)).  Indeed, as the Third Circuit pointed out, "[i]t is well established that only one question

of law or fact in common is necessary to satisfy the commonality requirement, despite the use of

the plural 'questions' in the language of Rule 23(a)(2)."  In re Schering Plough, 589 F.3d at 97

n.10.  See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183 (3d

Cir. 2001); In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986) (highlighting that the

threshold of commonality is not high).  It is not required that all putative class members share

identical claims. See Hassine v. Jeffes, 846 F.2d 169, 176-77 (3d Cir. 1988); Baby Neal, 43 F.3d

at 56 (stating that "factual differences among the claims of the putative class members do not defeat certification").

Here, the Court finds that there are common questions of law or fact shared among the class. Importantly, all members of the class received a materially identical debt-collection letter from Defendants. See Notice (ECF No. 55-2) at 1; Settlement (ECF No. 55-4) at ¶ 1.n (defining "settlement class members" as those who received a "materially identical" letter). All members of the class also share common questions of law, in particular, whether that letter was defective under the FDCPA. As such, the element of commonality is met.

### 3.    Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge, because they focus on similar aspects of the alleged claims." Newton, 259 F.3d at 182. Specifically, Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims of the class." See Fed. R. Civ. P. 23(a)(3). Typicality acts as a bar to class certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." Georgine v. Amchem Prods., 83 F.3d 610, 631 (3d Cir. 1996); Newton, 259 F.3d 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established  regardless of factual differences." Id. at 184. In other words, the typicality requirement is satisfied as long as the representative's claims and the class's claims arise from the same event, practice, or course of conduct and are based on the same legal theory. Brosious v. Children's Place Retail Stores, 189 F.R.D. 138, 146 (D.N.J. 1999). As discussed above, because Plaintiff's claims arise from the same course of conduct and are predicated on the same legal theories as the claims of all other members of the class—the

allegedly defective debt-collection letter sent by Defendants—the typicality requirement of Rule 23(a) is satisfied.

### 4.    Adequacy of Representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requires a determination of: (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class.  Newton, 259 F.3d at 187.  The Supreme Court has stressed that this element "serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625.  "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'"  In re Pet Food Prods. Liab. Litig., No. 08-4741, 2010 U.S. App. LEXIS 25628, at *26-27 (3d Cir. Dec. 16, 2010) (quoting Amchem, 521 U.S. at 625).  Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." Id. (citation and internal quotation marks omitted).  This element also functions as a catch-all requirement that "tends to merge with the commonality and typicality criteria of Rule 23(a)." Amchem, 521 U.S. at 626 n.20.

The named Plaintiff is an adequate representative for the class.  She alleged that she received a letter from Defendants, that letter being in essence a form letter, and that the letter failed to adequately apprise her of her rights and responsibilities under the FDCPA.  As discussed earlier, the alleged deficiency is that Defendants' letter did not state that Plaintiff had to dispute the debt or request creditor information in writing.  Am. Compl., ¶ 62.  Thus, Plaintiff faced the same allegedly bad practice from Defendants as all members of the class.  Nor is there

evidence that Plaintiff has any interests that are antagonistic to or in conflict with the class.  As such, the absent class members' interests will be protected adequately.  See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 522 (3d Cir. 2004).  Moreover, having reviewed class counsel's resumes (ECF No. 32-7), the Court is satisfied that Weisberg & Meyers, LLC is well experienced in prosecuting class actions on behalf of consumers.  The firm represents that it has "tried to jury verdict dozens of consumer protection cases" and handled "hundreds of consumer arbitration hearings" since November 2000.  ECF 32-7, at 1, 3.

Accordingly, the Court finds that class counsel will adequately represent the interests of the Plaintiff and the class.

### 5.        Superiority Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the class also must satisfy Rule 23(b)(3).  Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). The Rule sets out several factors relevant to the superiority inquiry: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Essentially, the superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  Prudential, 148 F.3d at 316 (internal citations and quotations omitted); see also In re Warfarin, 392 F.3d at 532-33.  In this case, each of these factors weighs in favor of class

certification.

First, the expense of individual actions in this FDCPA action, weighed against the potential recovery, would likely be inefficient and cost prohibitive. While the FDCPA does include a fee-shifting provision, it is available only to consumers who succeed on the merits. Therefore, it is far from clear that any significant number of class members would pursue their individual claims in separate actions. This observation is borne out as well by the fact that only twenty-two class members opted out of the class.

In addition, to meet the requirements of Rule 23(b)(3), the named plaintiff must show that common questions of law or fact predominate over questions affecting only individual class members. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and assesses whether a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Sullivan, 667 F.3d at 297 (internal quotations and citations omitted). In determining whether common questions predominate, courts have focused on the claims of liability against defendants. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977). Indeed, the Third Circuit recently explained that "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan, 667 F.3d at 298.

Here, as stated earlier, common legal and factual questions are shared among the class members and Plaintiff in this action. Specifically, class members and Plaintiff challenge the same allegedly improper debt-collection notice used by Defendants or ones materially identical. As such, there are no significant individual fact issues. Indeed, the most stark factual difference

-13-

between the class members would be the debt that Defendants were attempting to collect.  For example, one class member might have had a debt to Bank B while another had a debt to Creditor C, both of which were bought by Defendants for collection purposes.  But the nature of the debt itself has no effect on the merits, because the provisions of the FDCPA in question do not differentiate between types of consumer debt.  Thus, the legal issues raised derive from a "common nucleus" of operative facts that underlies all of the claims asserted in this case.  Accordingly, the factual and legal principles to be addressed by Plaintiff in prosecuting these claims are sufficiently common to the entire class, thereby satisfying the predominance requirement.  See, e.g., Amchem, 521 U.S. at 625 ("[P]redominance is a test readily met in certain cases alleging consumer or securities fraud.").

Having weighed all the factors and considered all the requirements of class certification, the Court finds that it is appropriate to certify the class for settlement purposes.

## IV.  APPROVAL OF SETTLEMENT

In determining whether to approve the class settlement, this Court is bound by Rule 23(e).  "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate."  In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995) (quoting Grunin v. Int'l House of Pancakes, 55 F.2d 114 (8th Cir. 1975)).  In general, the law encourages and favors settlement of civil actions in federal courts, particularly in class actions.  See In re Warfarin, 391 F.3d at 535; In re General Motors, 55 F.3d 768, 784 (3d Cir. 1995) ("[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation").  Accordingly, when a settlement is reached on terms agreeable to all parties, it is to be encouraged.  Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

Nevertheless, a class action settlement may not be approved under Rule 23(e) without a determination by this Court that the proposed settlement is "fair, reasonable and adequate."  See In re Cendant, 264 F.3d at 231; see also Fed. R. Civ. P. 23(e)(1)(A); Amchem, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).  And when settlement negotiations precede class certification and approval for settlement and certification are sought simultaneously, the Third Circuit requires district courts to be even "more scrupulous than usual" when examining the fairness of the proposed settlement.  See General Motors, 55 F.3d at 805.  This heightened standard is intended to ensure that class counsel has engaged in sustained advocacy throughout the course of the proceedings, particularly in settlement negotiations, and has protected the interests of all class members.  See Prudential, 148 F.3d at 317.

To ensure fairness, the Third Circuit has identified nine factors to consider when determining whether a proposed class action settlement is fair, reasonable and adequate.  See Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975).  These factors, often referred to as the Girsh factors, are:

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

-15-

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. at 156-57.  This Court has considerable discretion in approving a proposed settlement of a

class action.  Id. at 156.  In light of these principles, the Court will determine whether the

settlement in this case is reasonable.

### 1.    The complexity, expense and likely duration of the litigation

The first factor involves a consideration of the "probable costs, in both time and money of

continued litigation."  In re Cendant, 264 F.3d at 233.  The Court finds this factor weighs in favor

of settlement.

Were this matter to proceed, it would involve further discovery, trial preparation, and

litigation of various legal and factual issues.  Therefore, this litigation, like all civil litigation, has

the potential to be both time-consuming and expensive for the parties.  If the case were to

proceed to trial, there would likely be significant motion practice.  Defendants have been

steadfast in their denial of any wrongdoing (see Settlement Agreement (ECF No. 55-4), Fourth

Recital Clause) and would likely file a summary judgment motion challenging the alleged

FDCPA violations.  Finally, post-trial motions and the appeals process would further extend the

length of the litigation.  Accordingly, a significant amount of money and resources would be

required to pursue this litigation to a final judgment, which would ultimately delay any potential payout to the class.  As such, this factor favors settlement, although not significantly more so than any other civil litigation matter.

### 2.      The Reaction of Class Members

As indicated above, there are nearly 50,000 class members in New Jersey and Pennsylvania.  To date, the Court has received four objections, which are addressed below.  In addition, twenty-two individuals have requested exclusion from the class.  The objections are made in earnest, but most address the clarity of the notice and the breadth of the release.  For the purpose of this factor, the small number of requested exclusions, and even smaller number of objections, when compared to the potential number of class members, create a presumption that this factor weighs in favor of settlement.  See In re Cendant, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement").  Indeed, under Girsch, such a small number of negative responses favors approval of a class action settlement.  See, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 537 (D.N.J. 1997) (small number of negative responses to settlement favors approval); Weiss v. Mercedes-Benz of North America, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (100 objections out of 30,000 class members weighs in favor of settlement).

### 3.      The Stage of Proceedings and the Amount of Discovery Completed

This factor "captures the degree of case development that class counsel have

accomplished prior to the settlement.  Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating."  In re Cendant, 264 F.3d at 235 (citations omitted).  Even settlements reached at a very early stage and prior to formal discovery are appropriate when there is no evidence of collusion and the settlement represents substantial concessions by both parties.  Weiss, 899 F. Supp. at 1301.

This case had been litigated for about eight months before a settlement was reached and has involved both informal and formal discovery.  Radbil Decl., ¶¶ 7-9.  Discovery included exploration of the merits of Plaintiff's claims, the size of the class, and Defendants' net worth to calculate the maximum statutory damages recoverable under the FDCPA.  Supplemental Brief, Nov. 8, 2012, ECF No. 38, at 14.  The parties also met extensively and engaged in a series of conferences to discuss this matter and potential settlement.  Id. at ¶ 3-6.  Therefore, the Court finds that class counsel had sufficient information to make an informed decision regarding settlement.  Accordingly, this factor also weighs in favor of approval.

### 4.      Risks in Establishing Liability and Damages

The fourth and fifth factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement."  In re Warafin, 391 F.3d at 537.  In other words, these factors attempt "to measure the expected value of litigating the action rather than settling it at the current time."  In re Cendant, 264 F.3d at 237-39.  In this case, both factors weigh in favor of approving the settlement.

Here, Plaintiff alleges that Defendants violated the FDCPA and Defendants deny any wrongdoing.  Several reasons suggest that the settlement fairly measures the compensation.

-18-

Even if Plaintiff is ultimately successful, the FDCPA limits her potential recovery to $1,000, which she receives under the settlement (in addition, she also receives another $1,000 for being the named party and representing the class). Second, class members must bring an action based upon the letter in question within one year, per the applicable statute of limitation under the FDCPA. 15 U.S.C. § 1692k(d). Defendants represented at the fairness hearing that they ceased using the letter in question in early November 2011, after Plaintiff filed her complaint. See also Def. Br. Responding to Objections (ECF No. 55) at 8 ("Furthermore, HHL ceased using the complained-of language in November of 2011."). The parties sent notice to the class on November 21, 2012. Id. at 4. Given the one-year statute of limitations, any individual actions stemming from the same facts would have had to be filed by November 2012. All unnamed class members who have not already filed an action (and presumably excluded themselves from the class) could not, at this point, recover anything. Therefore, any recovery received by class members due to this settlement would be significant.

Accordingly, these two factors weigh heavily in favor of approval of the Settlement. See, e.g., In re Suprema Specialties, 2008 WL 906254 at *5-6; In re Genta Sec. Litig., 2008 WL 2229843 (D.N.J. May 28, 2008).

**5.    Risks of Maintaining the Class Action Through Trial**

The Third Circuit has explained that this factor tends to be neutral because "under Federal Rule of Civil Procedure 23(a), a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable," and proceeding to trial would always entail the risk, even if slight, of decertification. In re Cendant, 264 F.3d at 239. Accordingly, the Court finds this factor is neutral or slightly weighs in favor of the Settlement.

-19-

### 6.      Defendants' Ability to Withstand a Greater Judgment

This factor addresses whether Defendants "could withstand a judgment for an amount significantly greater than the [proposed] Settlement."  In re Cendant, 264 F.3d at 240.  This factor is moot here.  Under the FDCPA, a class action settlement is "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(B). Defendants have represented that the $40,000 class fund "was approximately 1% of the combined net worth [Defendants]."  Def. Br. Responding to Objections (ECF No. 55) at 4. Accordingly, the Court finds that this factor stands neutral.

### 7.      The Range of Reasonableness of the Settlement

The last two factors evaluate whether the settlement represents a fair and good value for a weak case or a poor value for a strong case.  In re Warfarin, 391 F.3d at 558.  "In conducting this evaluation, it is recognized that 'settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding too large a settlement based on the court's view of the [merits] of the litigation."  In re Safety Components, 166 F. Supp. 2d at 92; In re AT&T Corp. Sec. Litig., 455 F.3d 160, 170 (3d Cir. 2006) (finding settlement was an "excellent" result in light of the risk of establishing liability and damages despite the fact that settlement possibly represented only 4% of the total damages claimed).

Based on this record, it is difficult to assess the overall strength of Plaintiff's case. Defendants have made clear that if this matter does not settle, they would be prepared to assert several defenses to the Plaintiff's allegations, including the defense of bona fide error. Supplemental Brief, ECF No. 38, at 21.  It is difficult to assess with any reliability at this time the

relative merits of Defendants' defenses.  In any event, as discussed above, both the named Plaintiff and the class are receiving good value.  The Plaintiff recovers the maximum recovery allowable under the FDCPA (see 15 U.S.C. § 1692k(a)(2)(A)), and class members are able to recover some amount, whereas their actions otherwise would be time-barred.  These two factors also weigh in favor of approving settlement.

Having weighed all the factors, the Court finds that the class settlement is fair, reasonable and adequate, pursuant to Rule 23(e), and should be approved.

## V.  ADEQUACY OF NOTICE

A number of Objectors have complained about the adequacy of notice.  This inquiry is governed by Rule 23(h).  Like so many aspects of a class action, the touchstone for the question is "reasonableness."  In particular, Rule 23(h) requires "that notice of the motion of class counsel . . . must be directed to class members in a reasonable manner."  See also Stair v. Thomas & Cook, 254 F.R.D. 191, 203 (D.N.J. 2008).  The Court will now address the objections in detail.

Four class members filed objections, which can be categorized into two sets.  The first set is made up of the objections of Linda Carmona (ECF No. 41), Mark Sleighter (ECF No. 42), and Karl Jacoby (ECF No. 43) (the "Carmona Objectors").  All objections are identical and Sleighter and Jacoby specifically incorporate Ms. Carmona's objections by reference.  Additionally, these three objectors are represented by the same counsel.

The second set consists only of Joanne Chisena's objections.  Chisena adopts and joins the Carmona objections and makes two additional points for emphasis.

### ***Carmona Objections***

The Carmona Objectors have four general objections: (1) the class definition is unclear,

primarily as to the appropriate dates that define the class; (2) the class notice is deficient because it does not adequately apprise the class of the "minuscule" recovery; (3) adding Pennsylvania class members improperly dilutes the class and appears to be the result of collusion; and (4) the class notice is deficient because it does not adequately apprise the class of the broad nature of the release.[4]

### 1. Class Definition

The Carmona Objectors argue that the class definition is unclear and inconsistent. The crux of the concern is that the start and end dates binding the class are unclear.

#### a. Start Date

First, the Notice of Proposed Settlement provided that the notice is directed to all appropriate persons "who from September 27, 2010, received an initial letter from HHL" related to collecting a consumer debt. Notice of Class Action, (ECF No. 55-2), at 1. The second page of that notice explains that the class is defined as all appropriate persons "who within one year before the date of the Original Class Action Complaint [September 27, 2010] received an initial letter from Hayt, Hayt & Landau . . . ." Id. at 2 (brackets in original). The Complaint was filed on September 27, 2011. Further, the proposed Settlement Agreement itself defines the class period as "between September 27, 2010 (one year prior to the date of the filing of the Original Complaint) until the date of the Preliminary Approval Order's entry." Proposed Settlement Agreement, ECF No. 32-2, at ¶ 1(o). The Carmona Objectors primarily argue that the phrase "within one year," when considered with the bracketed date, is ambiguous. Carmona Objection,

---

[4] In addition, the Carmona objectors have filed a motion to intervene, which the Court addresses below.

ECF No. 41, at 4.  Counsel for Carmona stated at the hearing that he was unable to discern when the notice period began.  In particular, he asserted that it was unclear whether the September 27, 2010, date is when the complaint was filed or when the class period begins, thus it is confusing whether the class period begins in September of 2010 or of 2009.

The parties respond that any ambiguity is irrelevant because the Notice was sent to all putative class members based on Defendants' records of who received the allegedly offending letter.  Therefore, they claim, if a class member received a Notice then he or she was in the class.

Receipt of the Notice, by itself, does not necessarily alleviate concerns regarding clarity.  A putative class member who received the Notice would not necessarily know that he or she is in the class.  And if the Notice is unclear, then he or she cannot make that determination.  However, the Court is satisfied that the Notice is adequate.  That is, the statements in the Notice make it reasonably clear that the class period begins on September 27, 2010.

It is true that the descriptions in the Notice could have been drafted with more clarity, but that does not necessarily render the Notice fatally defective.  Under Rule 23(h), the standard is one of reasonableness.  Therefore, notice is not required to be perfect, but it must be reasonably adequate.  "Rule 23(e) does not require that a notice contain every specific detail related to the settlement." In re Ins. Brokerage Antitrust Litig., MDL No. 1663, No. 04-5184, 2012 WL 1071240, at *14 (D.N.J. Mar. 30, 2012); see also McDonough v. Toys "R" Us, Inc., 2011 U.S. Dist. LEXIS 150851, at *69-71 (E.D.Pa. Dec. 20, 2011) (finding that a failure to post *any* information regarding Class Counsel's fees was "was unfortunate but not fatal"). In this case, the first page of the Notice says that it is directed at persons who "from September 27, 2010" received an initial letter from Defendants materially identical to the one received by Plaintiff.  It

then says that the lawsuit was filed on September 27, 2011.  Notice of Class Action, (ECF No. 55-2), at 1.  Read within the context of the entire Notice, it is clear that when the Notice states that the class period begins "September 27, 2010 (one year prior to the date of the filing of the Original Complaint)" that the class period starts on September 27, 2010.

The only conceivable difficulty would stem from an individual reading the Notice and believing it included claims from one year prior to September 2010.  However, any such harm would not be sufficient to render the Notice invalid.  Such a claim would have been time-barred in any event and upon the recipient returning the claim form, it would have been ruled an invalid claim.[5]


b.  End Date

Second, the Carmona Objectors point out that there is no end date provided in the class definition and general description in the Notice, and that the class cannot be unbounded as to all potential future claims.

While not in the Notice, the Settlement Agreement itself specifies end dates, although they are inconsistent.  First, as quoted above, the Settlement Agreement defines the class period as from "between September 27, 2010 (one year prior to the date of the filing of the Original Complaint) until the date of the Preliminary Approval Order's entry."  Proposed Settlement Agreement, (ECF No. 55-4) at ¶ 1(o).  The Court entered the Preliminary Approval Order (ECF No. 39) on November 20, 2012.  By this definition, the class period would be between September

_____

[5] Claims Administrator, Michael Sutherland, stated in his affidavit that thirteen invalid claims were received and excluded from the class.  Sutherland Aff. (ECF No. 52-2) at ¶ 14.  He does not state why the claims were invalid.

27, 2010 and November 20, 2012.  At the hearing, the parties agreed this was the proper end date.

Yet the proposed settlement also provides that each class member releases all claims that arose "during the period of September 27, 2010 through Final Approval."  Id. at  ¶ 4(a). By itself, that date is troubling.  If someone received a notice from Defendants on the day the Court granted final approval, it would potentially give rise to a claim that would be barred by this settlement.  That person would not have had an adequate opportunity to object or to opt out of the class.

Defendants assert that any inconsistency is immaterial because they stopped issuing the allegedly defective notices in November 2011, so this concern is entirely academic.  Defendants also contend that the proposed settlement did not need to include the end date.

The Court concludes that the parties should have corrected the inconsistent dates in the Settlement.  However, that end date does not appear in the Notice itself, and counsel for the parties correctly assert that there was no reason to include the end date in the Notice.  The end date would not be particularly material information to a class member in deciding what course of action to take in regard to the class action itself.  Therefore, the discrepancy in the end date does not render either the notice to the class, or the settlement, defective.

**2. Minuscule Recovery**

The Carmona Objectors complain that the Notice does not adequately explain the paucity of any potential recovery by an unnamed class member.  The proposed settlement calls for a $40,000 fund to be equally divided among the responding class members.  From the class pool of 49,156, 5,082 valid claims were received, constituting approximately an 11% response rate.

Sutherland Aff. (ECF No. 51-2) at ¶¶ 10, 12.  Each claimant will receive approximately $7.87.

The Carmona Objectors argue that the Notice should have provided details as to the large class

pool and likely small recovery.

The Notice does not explain that the size of the claim pool is potentially large.  The

Carmona Objectors argue that the Notice implies that the members will receive a substantially

larger recovery than what is likely because the Notice states that "in no event" will a class

member receive more than $1,000.  Carmona Objection (ECF No. 41) at 6.

An Eastern District of Pennsylvania court ruled a similar notice deficient in another

proposed class action settlement involving Defendant HHL.  In Fry v. Hayt, Hayt & Landau, 198

F.R.D. 461, 471, 475 (E.D.Pa. 2000), the court reviewed the adequacy of the notice in a

settlement that involved potentially 52,000 class members and involved a settlement fund of

$453,500, less $150,000 in attorney fees and $80,000 in notification fees.  In reviewing a

proposed notice that had not yet been sent, the court required the notice to include the estimated

class pool:

> One revision is needed to give putative class members sufficient information to
> make a reasonable decision to opt-out of the class. The notice currently does not
> inform its readers that the number of potential class members may be as high as
> 52,000 individuals. Such information is necessary for a putative class member to
> weigh the pros and cons of accepting the settlement or choosing to opt out of the
> class. Consequently, this court requires that the following language be included in
> Section II of the notification announcement: "it is estimated that the number of
> class members may be as high as 52,000 members."

Id. at 475.  Procedurally this matter is different.  The Fry Court was addressing changes to be

made to a proposed notice before that notice was issued.  The Fry Court did not rule that a notice

lacking a statement on the size of the class pool is per se deficient.  Nor do Objectors point to any

case law suggesting as much.  The parties point out that they cannot know how many claimants would ultimately respond and to do so would invite other objections.  For example, other objections could arise if the parties had estimated a 5% response rate, which counsel stated during the final fairness hearing is a typical response rate, but instead 15% respond, thereby presenting a significant reduction in the per-claimant recovery.

Being that Defendants estimated the class size to be approximately 51,000 members, it would have been prudent to include that information in the Notice.  But based on the individual circumstances in this instance, failure to do so is not fatal to the notice.  It is sufficiently clear from other aspects of the Notice, including that the class includes members in both New Jersey and Pennsylvania, and includes all consumers who received a similar letter from Defendants, that the class pool is potentially large.  Moreover, nothing in the language of the Notice suggested that a class member would receive a particular amount.  The Notice only defined the limit of the recovery per member as $1000, without making any representation as to what each member ultimately would receive.

### 3.  Addition of Pennsylvania Members

The Carmona Objectors also complain about the addition of Pennsylvania class members. In particular, they note that the original Complaint was directed only at conduct in New Jersey and that none of the named class members is from Pennsylvania.  The Carmona Objectors contend that Pennsylvania was added "it appears, because it is a populous border state where Hayt often gets sued."  Carmona Objection at 8.  The Carmona objectors argue that this addition significantly increased the class size, thereby diluting the potential class recovery.

The Carmona Objectors point to no case law to suggest that it was improper to include

class members from Pennsylvania.  Rather, the Carmona Objectors assert that the inclusion is the result of collusion between the parties and that the settlement was not the product of an arm's length negotiation.  If this were the case, and the deal was the result of collusion, then the Court would certainly be reluctant to approving the settlement.  But this argument, by itself, does not support a finding of collusion, and the Carmona Objectors present little other indicia of collusion.  Additionally, the Carmona Objectors' argument presupposes that the $40,000 settlement fund would have been the same were the class limited to New Jersey.  There is no indication that would be the case.  Indeed, during the fairness hearing, Defendants represented that if the class was limited to New Jersey, they would not have offered the full 1% cap for settlement.  Hearing Tr. (ECF No. 55-3) at 97-98.  Counsel stated that had the claims been limited to New Jersey consumers, Defendants would have agreed to only $10,000 or less to settle the claims.  Id.  It is clear from the certification of Plaintiff's counsel that the parties spent a considerable amount of time and effort negotiating an arms-length settlement and that the final numbers were agreed upon only after much discussion.  The Objectors provide nothing to substantiate their claim of collusion, and the Court finds no evidence of collusion.

### 4.  The Release Is Overly Broad

The Carmona Objectors' last objection is that the release language in the Notice conflicts with release language in the proposed Settlement Agreement, and that no matter how the release is read, it is overly broad.  The Carmona Objectors' core concern is that other claims, apart from those involving the particular letter complained about in Plaintiff's Amended Complaint, are vulnerable to being released by this Settlement.

In pertinent part, the Notice states that a class member will "release and forever discharge

-28-

defendants from claims that were asserted or which could have been asserted in the Lawsuit or which arise from or relate or arise as a consequence of the acts and omissions complained of therein."  Notice of Class Action (ECF No. 55-2), at 4 (Section V).

The proposed settlement appears to broaden this language by stating in pertinent part:

> Plaintiff and each Settlement Class member who has not effectively opted out of the settlement shall forever release and discharge the Defendants, their respective representatives, heirs, fiduciaries, administrators, executors, trustees, conservators, directors, officers, members, partners, attorneys, employees, and affiliated companies, associated companies, predecessors-in-interest, successors-in-interest and assigns, from any and all manner of action and actions, cause and causes of action, claims and controversies whatsoever, that were asserted or could have been asserted in the litigation, arising out of or related in any way, in whole or in part, to the debt collection actions and other conduct which was alleged by Plaintiff in the litigation, and was allegedly performed by the Defendants during the period of September 27, 2010, through Final Approval.

Settlement Agreement (ECF No. 55-4) at ¶ 4(a).  Objectors cite to Third Circuit case law for the proposition that the notice must adequately set forth the release.  But the case they cite, In re Diet Drugs, instructs that "due process considerations counsel against binding absent potential class members to understandings that were not made express in the class notice or settlement agreement."  In re Diet Drugs, 369 F.3d 293, 310 (3d Cir. 2004).  Because the Settlement Agreement sets forth the release, it would appear to comply with this requirement.  Nevertheless, due process considerations also counsel against inconsistent representations in the Notice and Settlement Agreement.

The Carmona Objectors also complain that the terms in the release are vague (such as "affiliated companies," "associated companies," "heirs," "fiduciaries," and "successors-in-interest") and a putative class member cannot know with certainty whom exactly they are releasing.  The affiliated companies language could be particularly nettlesome considering that

Hayt, Hayt & Landau acts as a debt collector for a variety of different creditors.  Nor, argue

Objectors, can a putative class member know precisely what claims they are releasing.  Both

versions of the release include broad phrases such as claims that "could have been asserted,"

"related to the claims" in the lawsuit, and "arising" out of the claims in the lawsuit.  The

settlement release goes further, as quoted above.  Objectors cite to a District of New Jersey

opinion that found a proposed settlement unreasonable when the release was overly broad,

ambiguous, and untethered to the claims:

> The parties propose that in exchange for no payment, 800,000 consumers release
> all claims they could have asserted against the defendant . . . The broad release the
> class must give to settle is unfair and unreasonable given the phantom benefit they
> receive.  Further, the parties propose to release defendants from claims (i.e., state
> law claims) not asserted in the case.  It is troubling that plaintiff  did not include
> state law claims in her complaint because they could raise potential class
> certification problems, yet state law claims are included in the parties' release.

Zimmerman v. Zwicker & Assocs., P.C., No. 09-3905, 2011 U.S. Dist. LEXIS 2161, at *13-15

(D.N.J. Jan. 10, 2011).  The lack of payment to the class members in Zimmerman is a

distinguishing characteristic and the release at issue there specifically included claims not

involved in the litigation.  Here, on the other hand, the language in the Notice and the Settlement

is sufficiently clear that the claims released relate to the specific claims made by Plaintiff in her

Amended Complaint.

The discussion of the release in the Notice and the language in Settlement must be read in

context of the entire document and not parsed out.  Both refer to the underlying complaint in this

action and to others who received a letter from Defendants that was "materially identical."

Notice (ECF No. 55-2) at 1,2; Settlement (ECF No. 55-4) at ¶ 1(n).  The collection letter at issue

allegedly violated 15 U.S.C. §§ 1692g(a)(4) and (a)(5).  The parties make significant effort in the

Notice to explain the lawsuit and the particular claims in this case.  Notice at 1-2 ("Summary of

the Lawsuit"). Similarly, the release in the Settlement specifically sets out that all claims being

released arise out of the "conduct which was alleged by Plaintiff in this litigation."  Settlement at

¶ 4(a).  It is clear that, when read as a whole, the Notice refers only to, and the release applies

only to, claims stemming from a consumer receiving a letter that was materially identical to the

one at issue here and that allegedly violated 15 U.S.C. §§ 1692g(a)(4) and (a)(5) for not

explaining to the consumer that such requests had to be made in writing.[6]  It is evident that the

settlement and the release apply only to claims asserted in this litigation and arising from

materially identical letters sent from Defendants; those claims regard a debt-collection letter from

Defendants that failed to state that requests pursuant to §§1692g(a)(4) and (a)(5) must be made in

writing.  No other claims are at issue or are being released.  To the extent there is any ambiguity

now or in the future, the Court construes the settlement and the release to their most narrow

reasonable reading—the release applies only to those class members who had claims for

violating 15 U.S.C. §§ 1692g(a)(4) and (a)(5) based on a letter from Defendants that is materially

identical to the letter at issue here and during the appropriate time period as discussed above.

### *Chisena Objections*

Chisena joins and adopts the Carmona Objectors' concerns, but emphasizes that: (1) the

---

[6] To ameliorate any confusion, counsel for Defendants filed a "Stipulation Concerning Scope of Class Settlement Release" (ECF No. 51-1), in which counsel reiterates that the release applies solely to those specific claims stemming from Plaintiff's complaint.  Objectors respond that the Court must either approve or disapprove of the settlement without altering its terms. Objectors Suppl. Br. (ECF No. 56) at 3 (citing Sullivan v. D.B. Investments, Inc., 667 F.3d 273, 312 (3d Cir. 2011).  Here, the Court is not altering the Settlement Agreement.  Rather, it is only stating its understanding of the settlement from a plain reading of the entirety of the document. Defendants' counsel stipulation is unnecessary, but confirms the Court's reading of the settlement itself as being limited to the narrow claim set forth in Plaintiff's complaint.

release is overly broad because it releases claims "wholly unrelated to the allegations found in the Complaint" and (2) "adding Pennsylvania claim members . . . at the 'last minute' was patently unfair." Chisena Objections, ECF No. 47, at 3. Chisena is concerned that the broad release will bar her claims against the creditor, Merrick Bank, that hired Hayt, Hayt & Landau to collect a debt against her because Merrick would be considered an "affiliated company." Id. at 3-4. Chisena argues that bar would be unfair because Merrick is not an entity involved in the underlying merits of this matter. Chisena also argues that the addition of Pennsylvania class members significantly dilutes any recovery. Id. at 3. The Court has addressed these concerns above in regards to the Carmona Objectors.

As noted above, notice is not required to be perfect, but it must be reasonably adequate. In re Ins. Brokerage Antitrust Litig., 2012 WL 1071240, at *14. For the reasons set forth above, the Court finds that the notice here was reasonable and adequate based on the present circumstances, and Objectors' concerns are overruled.

## VI. ATTORNEYS FEES AND EXPENSES

Defendants have agreed to pay $40,000 to Plaintiff's counsel for fees and costs. In particular, the Settlement provides: "Separate and apart from the Settlement Fund, Defendants shall pay the sun of forty thousand dollars ($40,000.00) to Weisberg & Meyers, LLC to fairly compensate Weisberg and Meyers, LLC, for its service to Plaintiff and the Settlement Class Members, this being the reasonable sum of attorneys' fees and costs incurred serving as Class Counsel." Settlement (ECF No. 55-4) at ¶ 3(d). None of the Objectors raises concern over the payment of attorneys' fees.

The Court must analyze the attorneys' fee provision under Rule 23(e) in much the same

fashion as the settlement itself.  "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'"  Staton v. Boeing Co., 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).  The Court has the discretion to amend or modify the award of attorneys' fees.  "The amount of the award of attorneys' fees and expenses is controlled by the Court and is within its sound discretion."  In re Computron Software, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 783, 821 (3d Cir. 1995)); see also Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir. 1980) ("A district court is not bound to the agreement of the parties to the amount of attorneys' fees.").

Attorneys' fees are typically assessed through the lodestar method.  In re AT&T Corp. Sec. Litig., 455 F.3d 160, 164 (3d Cir. 2006).  The lodestar method multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services.  Id.  In common-fund cases, where the settlement fund is reduced by the fees, the Court must, with heightened scrutiny, analyze the fairness of the fees as the award of fees reduces the class members' recovery.  In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005); In re Lucent Technologies, 327 F. Supp. 2d at 431.  Here, where the funds are separate, the Court must still assess the reasonableness of the claim, but without the concern that the settlement fund will be diluted.

*Lodestar Analysis*

Class counsel has submitted an affidavit concerning the fees spent on the case and the experience of Weisberg & Myers dealing with similar cases.  As of March 14, 2013, Plaintiff's

counsel spent 186.4 hours litigating this matter.  Radbil Decl. ¶ 8.  The hourly rate varied from $335 for firm partners to $100 for staff, with the vast majority of the work being performed by Mr. Radbil at a rate of $230 per hour.  The total amount of billings generated was $45,672.  Id. at ¶ 9.  The Court has reviewed the entries and it appears that the time spent is reasonable considering the type of case and the progression of the case before the parties reached a settlement.  The class size here is substantial, involving consumers in two states, and class counsel has managed to negotiate a favorable settlement for the class.  While the recovery is certainly not substantial per class member, it bears repeating that most, if not all, class members would otherwise be time-barred from seeking any recovery for the claims set forth in the Amended Complaint.  Moreover, Defendants have ceased using an allegedly improper form letter in their debt-collection efforts.

Also, as discussed earlier, it is evident that class counsel competently represented both the named Plaintiff and the class members.  To measure the quality of counsel, courts examine the result achieved, the difficulties faced, and the speed and efficiency of the recovery, the experience and expertise of counsel, and the performance and quality of opposing counsel.  Million v. T-Mobile USA, Inc., 2009 WL 3345762, at *10 (D.N.J. Sept. 10, 2009).  In this case, class counsel negotiated a valuable settlement within a reasonable amount of time since the start of this litigation.  Because of their timely efforts, the class will benefit more; had this case proceeded further, it would have done so with an uncertain result, and it would have necessitated a greater expenditure of fees and costs.  The Court also notes that although the Class Counsel's fees equal the class recovery amount, the attorneys in this case have expended significant amounts of time and effort in pursuing a successful settlement. It appears that the hourly rates

-34-

and the total hours exhausted by the attorneys constitute a fair and reasonable representation of the work required in this particular class action.

Based on the circumstances of this matter, and the fact that the amount of fees generated is commensurate with what the parties have negotiated for Plaintiff's counsel's fees as well as the payment of fees being made separate from payment to the class members, the Court finds that the payment of $40,000 for fees and costs is reasonable.

## VII.  MOTION TO INTERVENE

Finally, the Court turns to the Carmona Objectors motion to intervene.  Objectors seek to intervene in order to:

> 1. Preserve their rights on behalf of themselves and other class members to pursue claims for violations of the Fair Debt Collection Practices Act ("FDCPA") against the Defendants which have not been asserted by the class representatives, but which may be released by the proposed settlement;
>
> 2. Conduct any necessary discovery into the fairness of the proposed settlement on behalf of themselves and other class members;
>
> 3. Challenge the adequacy of the proposed settlement on behalf of themselves and other class members;
>
> 4. Preserve all rights as intervener in connection with their Objections to class settlement.

Objector Br. (ECF No. 46) at 1.  The Court denies the motion for the reasons stated below.

Rule 24(a) governs requests to intervene.  Subsection (a)(2) provides in pertinent part:

> Upon a timely application anyone shall be permitted to intervene in an action:. . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect the interest, unless the applicant's interest is adequately represented by the existing parties.

Fed. R. Civ. P. 24(a)(2).  The purpose of the rule is to allow "an absentee [to] be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action[.]"  Fed. R. Civ. P. 24, Advisory Committee Notes, 1966.  To intervene as a matter of right, a movant must establish that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation."  In re Community Bank of N. Va., 418 F.3d 277, 314 (3d Cir. 2005) (quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)). The moving party bears the burden of establishing his or her right to intervene, and failure to satisfy any one of the criteria justifies denial of the application.  Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365–66 (3d Cir. 1995).

As addressed above, the Carmona Objectors make arguments regarding the sufficiency of the notice and the reasonableness of the settlement.  But this Court does not find any reason to grant Objectors' motion, either as a matter of right or permissively.  Specifically, the Carmona Objectors fail to satisfy factors three and four.  This Court finds that Objectors' interests are adequately preserved and they have been afforded a full and fair opportunity to make their objections and argue them at the fairness hearing.  Therefore, their motion for leave to intervene is unnecessary.  For the sake of completeness, the Court will address each factor for mandatory intervention below.

### 1.    Timeliness

To determine if an application is timely, the Court must consider three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for

the delay." Mountain Top, 72 F.3d at 368 (citing In re Fine Paper Antitrust Liquidation Litig., 695 F.2d 494, 500 (3d Cir. 1982)).  "There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." Benjamin ex rel. Yock v. Dept. of Public Welfare of Pa., 701 F.3d 938, 950 (3d Cir. 2012).

Here, Objectors acted promptly after receiving class notice and filed the motion to intervene a month before the final fairness hearing.  Thus, the Court finds that the Objectors timely filed their application to intervene.

### 2.     Sufficient Interest in the Litigation

Having found that the request to intervene is timely, the Court next examines Objectors' interest in this litigation.  Whether or not a movant has a sufficient interest in the litigation depends on the movants' ability to establish that their interests are ones that "the substantive law recognizes as belonging to or being owned by the applicant." United States v. Alcan Aluminum, 25 F.3d 1174, 1185 (3d Cir. 1994).  In addition, "the interest must be a legal interest as distinguished from interests of a general and indefinite character" and "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220–21 (3d Cir. 2005).  The Third Circuit confirmed that "[a]n intervenor's interest must be one that is significantly protectable." Id. at 220.  In this case, Objectors have shown sufficient interest in the litigation, as they are members of the proposed class and would be bound by the proposed class settlement and release.

### 3.     Impairment of Practical Interest

The Third Circuit instructs that, "[o]nce an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit." Id. at 226 (citing Brody v. Spang, 957 F.2d 1108 (3rd Cir. 1992)).  According to the Treesdale Court, "[u]nder this element of the test, the [proposed intervener] must demonstrate that their legal interests may be affected or impaired, as a practical matter by the disposition of the action." 419 F.3d at 226.  Even if a significant interest is found on behalf of the applicants, "there must be a tangible threat to the applicant's legal interest." Id. at 226–27.

As discussed above, the Carmona Objectors complain that the release may operate to waive their potential claims under the FDCPA.  The Court has found that this argument is without merit.  Nevertheless, the Supreme Court has held that the right to appeal is not restricted to named parties to the litigation.  Devlin v. Scardelletti, 536 U.S. 1, 7 (2002).  Unnamed class members are parties who may appeal the approval of a settlement. Id. at 11.  Moreover, Objectors had a chance at the fairness hearing to object to the settlement and the Court allowed them an opportunity to file a supplemental brief (see ECF No. 56).  Although approval of the settlement affects the Objectors, the Court's decision regarding the intervention motion will not finally dispose of any right or claim they might have differently than if they were allowed to intervene.  See Marino v. Ortiz, 484 U.S. 301 (1988)).  Therefore, the Court finds that Objectors' rights with respect to the Settlement Agreement are fully preserved without intervention.

### 4.     Interest Not Adequately Represented by Class Counsel

The Court also finds that Objectors have failed to establish that the class members' interests are not adequately represented by class counsel.  The Carmona Objectors assert that they

possess a separate claim for statutory damages under the FDCPA than that of the named Plaintiff. Mot. to Intervene (ECF No. 46) at 5. This assertion is irrelevant because the scope of the settlement is directed only to the claim asserted in the Amended Complaint, which is based on the letter Plaintiff received from Defendants. Again, it is not necessary for an unnamed class member to move to intervene in the litigation in order to preserve his or her ability to bring an appeal. See Devlin, 536 U.S. at 8–11 (holding that when a district court approved a settlement of a class action after a fairness hearing, a class member who was not named a class representative, but who had objected in a timely manner at the fairness hearing, had standing to appeal the district court's decision, without first intervening in the action, because such an objecting unnamed class member is considered a "party" for purposes of appealing the settlement approval).

Objectors urge the Court to grant their motion to intervene so they may protect claims they argue are released by the settlement. As stated above, the Settlement Agreement would release only a specific set of claims that Objectors may have against Defendants. The Class Notice explains the appropriate scope of the release as comprising "claims which could have been asserted in the Lawsuit or which arise or relate or arise as a consequence of the acts and omissions complained of therein." Notice of Proposed Settlement (ECF No. 41-1), at 10. In regards to these claims, Objectors are adequately represented by Class Counsel. The Court has found that the settlement class sufficiently satisfied the requirements under Rule 23 for class certification, including that the representative Plaintiff and settlement Class Counsel will fairly and adequately represent the interests of the settlement class. The Court also has found that the Settlement Agreement is fair and reasonable. Therefore, the Court finds that Objectors' claims

are not released and are protected, and that they are adequately represented by the current parties.

### 5.        Permissive Intervention

Finally, Objectors argue that if the Court finds they have not satisfied the elements for mandatory intervention, the Court should grant them permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).  Under Rule 24(b), the Court may grant permissive leave to appear if the intervenor (1) acts timely, and (2) shares a claim or defense to that of the case.  Fed. R. Civ. P. 24(b).  Whether to grant permissive intervention under Rule 24(b) is within the discretion of the Court.  Brody v. Spang, 957 F.2d 1108, 1124 (3d Cir. 1992).  The Third Circuit has held that "if an intervention as of right is not available, the same reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well."  Id.  As mentioned above, any objections can be addressed without intervention.  Devlin, 536 U.S. at 3.  "Otherwise, all class members would be forced to intervene to preserve their claims, and one of the major goals of class action litigation–to simplify litigation involving a large number of class members with similar claims–would be defeated."  Id. at 10.  In this case, the Carmona Objectors have had a chance to be heard, both on paper and at the final fairness hearing.  Further, they have an opportunity to appeal.  Therefore, this Court declines the Objectors' request to permissively intervene.

**VIII. CONCLUSION**

For the reasons stated above, the Court will certify the class as defined, grant final approval to the settlement, and deny Objectors' motion to intervene.  An appropriate Order and Judgment consistent with this Opinion will follow.

*s/ Michael A. Hammer*
UNITED STATES MAGISTRATE JUDGE

Dated: September 10, 2013